AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

| United States of America | ) | |
| | ) | |
| v. | ) | Case No. 09-MJ- *4137* |
| | ) | |
| TYSHE BANKSTON, MERRICK HENRY, | ) | |
| JOCELYN JOSEPH, BERNARD LAWSON, | ) | |
| MANRE EBHOMIELEN, and VAL TAYLOR | ) | |

*UNITED STATES DISTRICT COURT*
*FILED*
*OCT 1 3 2009*
*MICHAEL J. ROEMER, CLERK*
*WESTERN DISTRICT OF NY*

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

During the year 2008, in the county of Monroe, in the Western District of New York, the defendants violated 18 U.S.C. §§ 1341, 1344 and 371, said offenses described as follows:

(a) MANRE EBHOMIELEN and JOCELYN JOSEPH with violating Title 18, United States Code, Section 1341 (mail fraud);

(b) MANRE EBHOMIELEN, TYSHE BANKSTON, MERRICK HENRY AND VAL TAYLOR with violating Title 18, United States Code, Sections 1341(mail fraud) and 371 (conspiracy to commit mail fraud);

(c) MANRE EBHOMIELEN and BERNARD LAWSON with violating Title 18, United States Code, Section 1341 (mail fraud); and

(d) MANRE EBHOMIELEN with violating Title 18, United States Code, Section 1344 (attempted bank fraud).

This criminal complaint is based on these facts:

• Continued on the attached sheet.

*Michelle K. Mann*
*Complainant's signature*

Michelle K. Mann
United States Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  October 13, 2009

*Marian W Payson*
*Judge's signature*

Honorable Marian W. Payson
United States Magistrate Judge
*Printed name and title*

City and State:  ROCHESTER, NEW YORK

**AFFIDAVIT IN SUPPORT
OF A CRIMINAL COMPLAINT**  *09-mg-4137*

STATE OF NEW YORK )
COUNTY OF MONROE  )
CITY OF ROCHESTER )

I, Michelle K. Mann, being duly sworn, deposes and states:

## I.  INTRODUCTION

1.  I am a United States Postal Inspector assigned to the Boston Division of the Postal Inspection Service.  I have been a Postal Inspector for approximately nineteen years.  I am presently assigned to conduct investigations involving mail fraud and dangerous mail investigations.  I have been involved in the drafting of search warrants and arrest warrants, and interviewing individuals involved in mail and bank fraud schemes.  In addition to the above experience, I have attended mail fraud training classes that were organized by the Postal Inspection Service.

2.  In the regular course of my duties, I have been involved in a mail fraud investigation regarding MANRE EBHOMIELEN and others.  I have personally participated in this investigation and, as a result of my participation and my review of reports made by other Postal Inspectors and other law enforcement

agencies, I am familiar with the facts and circumstances of this investigation.

3.  I make this affidavit in support of a complaint charging (a) MANRE EBHOMIELEN ("EBHOMIELEN") and JOCELYN JOSEPH ("JOSEPH") with violating Title 18, United States Code, Section 1341 (mail fraud); (b) EBHOMIELEN, TYSHE BANKSTON ("BANKSTON"), MERRICK HENRY ("HENRY") and VAL TAYLOR ("TAYLOR") with violating Title 18, United States Code, Section 1341 and Title 18, United States Code, 371 (conspiracy to commit mail fraud); (c) EBHOMIELEN and BERNARD LAWSON ("LAWSON") with violating Title 18, United States Code, Section 1341; and (d) EBHOMIELEN with violating Title 18, United States Code, Section 1344 (attempted bank fraud)).

4.  At all times relevant, Flaherty Funding Corporation (Flaherty Funding") was a licensed mortgage company located at 2595 Brighton Henrietta Town Line Road, Rochester, New York 14623.

5.  In or about April 2008, Flaherty Funding contacted Vista Mortgage, a licensed mortgage company located in Queens, New York, in an effort to expand its business into the New York City

-2-

area.   Flaherty Funding and Vista Mortgage eventually agreed that
Vista Mortgage would close its operation and some of its staff
would become employees of Flaherty Funding.   One such person was
EBHOMIELEN.


## II.   SCHEME TO DEFRAUD AND TO OBTAIN MONEY


### A.   16404 107th Avenue, Jamaica, New York 11433

6.   On or about September 12, 2008, JOCELYN JOSEPH purchased
real property located at 16404 107th Avenue, Jamaica, New York
11433, for $594,000.


7.   To fund the purchase of the property, JOSEPH stated that
he applied for a mortgage loan from Flaherty Funding.   The
mortgage loan application stated that MANRE EBHOMIELEN was the
mortgage loan officer for the mortgage loan.   JOSEPH stated that
he was never interviewed by EBHOMIELEN.   Thus, on the
application, EBHOMIELEN falsely stated that he had interviewed
JOSEPH by telephone.

8.   The following documents were submitted to Flaherty Funding in connection with the mortgage application:

a.   A loan application, dated June 27, 2008, stating that JOSEPH was employed by Superior Development Corp, 954 Sunrise Highway, North Babylon, New York 11703, as Director of Operations and had a monthly base income of $9,000.   The loan application also stated that JOSEPH had a checking and/or savings account with Bank of America with a value of $35,317.00.   Further, the loan application stated that JOSEPH made a cash deposit to the seller of $59,400.00.

b.   ADP Earnings statements from Superior Home Builders, dated July 18, 2008, and August 01, 2008, each indicating that JOSEPH earned a gross biweekly income of $4,231.50.

c.   A form W-2, Wage and Tax Statement for 2006 which stated that JOSEPH's employer was Superior Home Builders with earnings of $105,007.50.   A form W-2, Wage and Tax Statement for 2007 which stated that JOSEPH'S employer was Superior Home Builders with earnings of $108,004.00.

d.   June 2008 and July 2008 Bank of America checking statements.   The June 2008 statement revealed an ending balance of $35,317.49.   The July 2008 statement revealed an ending balance of $35,432.25.

9.   The investigation revealed that the above listed documents were false and fraudulent.   Specifically, JOSEPH has admitted that he was never employed by Superior Development Corp. He also advised that he did not have a bank account at Bank of America, nor pay a deposit to purchase the property

10.   ADP, Inc. was unable to locate any information pertaining to Superior Home Builders.

-4-

11.  As a result of the false documents and information provided to Flaherty Funding, JOSEPH received a mortgage in the amount of $533,850.00 from Flaherty Funding.

12.  After the mortgage transaction closed in the New York City area, the mortgage loan files with the various mortgage loan documents signed and executed at the closing of 16404 107th Avenue, Jamaica, New York 11433 were sent from the New York City area to Flaherty Funding in Rochester by a private, commercial, interstate carrier.

**B.  <u>1785 Pacific Street, Brooklyn, New York 11213</u>**

13.  TYSHE BANKSTON stated that she met VAL TAYLOR in July 2008.  BANKSTON also advised that in July 2008, TAYLOR offered BANKSTON the amount of $10,000.00 if BANKSTON would agree to purchase and keep in her name for one year the house located at 1785 Pacific Street, Brooklyn, New York 11213.  Shortly thereafter, BANKSTON  stated that she was introduced to MERRICK HENRY by TAYLOR.  BANKSTON believed that HENRY and TAYLOR were business partners.  BANKSTON further stated that HENRY also told her that she would receive $10,000.00 if she purchased the house

for one year, and that HENRY would make the mortgage payments for her. BANKSTON then signed some documents for HENRY.

14. To fund the purchase of the house, a mortgage application was submitted to Flaherty Funding on BANKSTON's behalf. EBHOMIELEN was listed on the application as the mortgage loan officer for the mortgage loan. On the application, EBHOMIELEN falsely stated that he interviewed BANKSTON by telephone. BANKSTON advises that she never spoke with EBHOMIELEN and only dealt with HENRY and TAYLOR.

15. The following documents were submitted to Flaherty Funding in connection with the mortgage application:

a. A loan application, dated August 19, 2008, stating that BANKSTON was employed by Fattongue Multimedia Productions at 70 South Munn Avenue, East Orange, New Jersey 07018, as a director and had a monthly base income of $9,000. The loan application also stated that BANKSTON had a checking and/or savings account with ING Direct with a value of $65,201. Further, the loan application stated that BANKSTON made a cash deposit to the seller of $63,500.

b. ADP Earnings statements from Fattongue Multimedia Production, dated August 12, 2008, and August 26, 2008, indicating that BANKSTON earned a gross biweekly income of $4,140.50.

c. A form W-2 Wage and Tax Statement for 2007 which stated that BANKSTON's employer was Fattongue Multimedia Production with earnings of $107,653.

d. A June 2008 ING statement revealing a closing balance of $65,361.61, and a July 2008 ING statement revealing a closing balance of $65,522.83.

-6-

    e.   A letter dated September 23, 2008, from CPA Anthony Small, which stated that the 2006 and 2007 tax returns of BANKSTON were erroneously prepared and the 2006 and 2007 Amended Tax Returns were issued.

    f.   Amended 2006 and 2007 Amended Tax Returns.  The 2006 Amended Return stated that the original adjusted gross income was $24,116 and the corrected annual adjusted gross income was $122,378.  The 2007 Amended Return stated that the original adjusted gross income was $31,033 and the corrected annual adjusted gross income was $139,285.

16.   The investigation revealed that the above listed documents were false and fraudulent.  Specifically, BANKSTON has admitted that she was never employed by Fattongue Multimedia. She advised that HENRY told her to say she worked for Fattongue Multimedia.  BANKSTON stated that the W-2's are false documents supplied by HENRY.  BANKSTON further stated that she never had an ING savings account, and that she never filed an Amended Tax Return with Anthony Small.

17.   A check of postal records revealed that HENRY received mail at 70 South Munn Avenue, Apt. 501, East Orange, New Jersey 07018.

18.   A search of NYS Professions License Verification did not reveal a CPA license in the name of Anthony Small.

19.   Bank records revealed that on September 12, 2008, $10,000.00 was deposited into BANKSTON's Capital One account. Bank records also revealed that ING account XXXXX9925 in the name of BANKSTON was opened on August 27, 2008, with a $20 deposit.

20.   ADP, Inc. was unable to locate any information pertaining to Fattongue Multimedia Production.

21.   On or about September 10, 2008, BANKSTON purchased 1785 Pacific Street, Brooklyn, New York 11213, for the amount of $635,000.   HENRY took BANKSTON to the closing.   TAYLOR was also present at the closing.

22.   As a result of the false documents and information provided to Flaherty Funding, BANKSTON received a mortgage in the amount of $533,850.00 from Flaherty Funding.

23.   After the mortgage transaction closed in the New York City area, the mortgage loan files with the various mortgage loan documents signed and executed at the closing of 1785 Pacific Street were sent from the New York City area to Flaherty Funding in Rochester by a private, commercial, interstate carrier.

C.   **883 Herkimer Street, Brooklyn, New York 11213**

24.   On or about July 8, 2008, BERNARD LAWSON purchased real property located at 883 Herkimer Street, Brooklyn, New York 11233, for $760,000.

25.   To fund the purchase of the property, a mortgage loan application on LAWSON's behalf was submitted to Flaherty Funding. EBHOMIELEN was listed as the mortgage loan officer for the mortgage loan.   On the application, EBHOMIELEN falsely stated that he interviewed LAWSON by telephone.

26.   The following documents were submitted to Flaherty Funding in connection with the mortgage application:

a.   A loan application, dated June 02, 2008, stating that LAWSON was employed by NJN Holdings, 38 31 Lyme Avenue, Brooklyn, New York 11234, as Director of Operations and had a monthly base income of $15,000.   The loan application also stated that LAWSON had a bank account with a value of $200,000.   Further, the loan application stated that JOSEPH made a cash deposit to the seller of $109,285.53.

b.   ADP Earnings statements from NJN HOLDING CORPORATION, 38 31 Lyme Avenue, Brooklyn, New York 11224, dated May 16, 2008, and May 30, 2008, indicating that LAWSON earned a gross biweekly income of $7,500.

c.   A form W-2 Wage and Tax Statement for 2006 which stated that LAWSON's employer was NJN HOLDING CORPORATION with earnings of $190,008.

d.   A Citibank statement for account number XXXX1850 for the period April 2 through May 5, 2008, revealing a beginning balance of $62,470.63 and an ending balance of

$57,697.24.  A Citibank statement for account number XXXX0505 for the period April 2 through May 5, 2008, revealing a beginning balance of $58,954.51 and an ending balance of $58,054.51.

e.   A letter dated June 22, 2008, addressed "To Whom it May Concern"  stating, in sum and substance, that the writer presently lives in Central Islip and wants to move to Brooklyn because he has worked at NJN Holding in Brooklyn for the past five years.  The typed name underneath the signature line is JOSEPH ARTUSA, but the letter contained the signature B. LAWSON.  On July 2, 2008, a Memorandum explaining the wrong name was submitted by EBHOMIELEN. EBHOMIELEN stated that LAWSON dictated the letter to an office assistant, but she inadvertently put another client's name on the letter.  A corrected letter dated June 23, 2008 was submitted with LAWSON'S name and signature.

27.   The investigation revealed that the above listed documents were false and fraudulent.  Specifically, LAWSON has admitted that he was never employed by NJN Holdings.

28.   Further, Citibank records reveal that the time period of April 2 through May 5, 2008, which was on the false bank record submitted to Flaherty Funding is not a correct statement period.  Citibank records for the statement period April 23 through May 22, 2008, for account number XXXX1850 revealed a beginning balance of $2,833.82 and an ending balance of $4,378.23.  The ending balance of $4,378.23 was the highest balance during the statement period.  Citibank records for the statement period April 23 through May 22, 2008, for account number XXXX0505 revealed a beginning balance of $3,152.78 and an

ending balance of $653.33.  The beginning balance of $3,152.78 was the highest balance during the statement period.

29.  Citibank records revealed that upon opening the account in or about December 2003, LAWSON's employer was listed as Oak Wood Care Center.  Further, Citibank records for the statement period  April 23 through May 22, 2008, show weekly deposits from Oakwood Payroll.  The records did not reveal any deposits from NJN HOLDING CORPORATION.

30.  ADP, Inc. was unable to locate any information pertaining to NJN Holding Corporation.

31.  As a result of the false documents and information provided to Flaherty Funding, LAWSON received a mortgage in the amount of $646,300.00 from Flaherty Funding.

32.  After the mortgage transaction closed in the New York City area, the mortgage loan files with the various mortgage loan documents signed and executed at the closing of 1785 Pacific Street were sent from the New York City area to Flaherty Funding in Rochester by a private, commercial, interstate carrier.

D.  **29 Beach Avenue, Copiaque, New York 11726**

33.   On or about June 27, 2008, a mortgage application in the name JOE ARTUSA ("ARTUSA") was filed with Flaherty Funding in connection with the intended purchase by ARTUSA of the property located at 29 Beach Avenue, Copiaque, New York 11726.   EBHOMIELEN was the mortgage loan officer for the mortgage loan.   On the application, EBHOMIELEN stated that he interviewed ARTUSA by telephone.

34.   The following documents were submitted to Flaherty Funding in connection with the mortgage application:

a.   A loan application, dated June 27, 2008, stating that ARTUSA was employed by Unique Fence, 274 W. Hoffman Avenue, Lindenhurst, New York 11757, as Director of Operations and had a monthly base income of $14,850.   The loan application also stated that ARTUSA had a checking and/or savings accounts with Bank of America with a value of $24,067 and Wachovia Securities with a value of $37,319.   Further, the loan application stated that ARTUSA would be making a cash payment of $38,605.52 at the closing.

b.   ADP Earnings statements from Unique Fence, dated July 02, 2008, and July 16, 2008, indicating that ARTUSA earned a gross biweekly income of $6,885.50.

c.   A form W-2 Wage and Tax Statement for 2006 which stated that ARTUSA's employer was UNIQUE FENCE with earnings of $172,029.   A form W-2 Wage and Tax Statement for 2007 which stated that ARTUSA's employer was UNIQUE FENCE with earnings of $179,023.06.

35.   The above described documents were then submitted to Wells Fargo Bank, NA, a bank whose deposits were federally insured.   Wells Fargo Bank, NA was to purchase the mortgage loan from Flaherty Funding after the loan was funded by Flaherty Funding.   Thus, Wells Fargo Bank, NA had to approve the mortgage loan based on the documents submitted by ARTUSA and EBHOMIELEN.

36.   The investigation revealed that the documents listed above were false and fraudulent.   Specifically, ARTUSA stated that he never worked for Unique Fence nor even heard of Unique Fence.   He advised that he works for himself; his business is Artusa Construction.   He stated that he never supplied W-2's from Unique Fence.   He never purchased 29 Beach Avenue, Copiague, New York 11726.   He said that he pulled out of the process because of unusual events during the loan process.

37.   ADP, Inc. was unable to locate any information pertaining to Unique Fence.

38.   The mortgage loan in the amount of $328,500 was never provided by Flaherty Funding to ARTUSA because ARTUSA

-13-

decided to not go through with the purchase of the property. However, based on the false documents submitted to Flaherty Funding, the mortgage loan had been approved by Flaherty Funding and Wells Fargo Bank, NA.

### E. **117 48 135th Street, South Ozone Park, NY 11420**

39.   On or about June 19, 2008, a mortgage application in the name BERNY CEAN ("CEAN") was filed with Flaherty Funding in connection with the intended purchase by CEAN of the property located at 117 48 135th Street, South Ozone Park, New York 11420. EBHOMIELEN was the mortgage loan officer for the mortgage loan. On the application, EBHOMIELEN stated that he interviewed CEAN by telephone.

40.   The following documents were submitted to Flaherty Funding in connection with the mortgage application:

> a.   A loan application dated June 19, 2008, stating that CEAN was employed by BC Eye Glass Express, 1944 Ralph Avenue, Brooklyn, New York 11234, 718-444-1401, as Vice President and had a monthly base income of $14,170.   The loan application also stated that CEAN had a bank account with a value of $28,000.   Further, the loan application stated that CEAN made a cash deposit to the seller of $82,500.

> b.   ADP Earnings statements from BC Eye Glass Express, dated July 03, 2008, and July 17, 2008, indicating that CEAN earned a gross biweekly income of $6,540.

c.    A form W-2 Wage and Tax Statement for 2006 which
stated that CEAN's employer was BC Eye Glass Express
with earnings of $167,000.  A form W-2 Wage and Tax
Statement for 2007 which stated that CEAN 's employer
was BC Eye Glass Express with earnings of $170,040.

d.    A Commerce Bank/TD Bank statement for account
number XXXXXX6744 for the period June 16 through July
15, 2008, revealing an ending balance of $70,744.64.

41.   The above described documents were then submitted to

JPMorgan Chase Bank, N.A., a bank whose deposits were federally

insured.  JPMorgan Chase Bank, NA was to purchase the mortgage

loan from Flaherty Funding after the loan was funded by Flaherty

Funding.  Thus, JPMorgan Chase Bank, NA had to approve the

mortgage loan based on the documents submitted by CEAN and

EBHOMIELEN.

42.   The investigation revealed that the documents listed

above were false and fraudulent.  Specifically, the phone number

listed on the application for BC Eyeglass Express, 718-444-1401,

is no longer in service.

43.   Further, Commerce Bank/TD Bank was not able to locate

an account number XXXXXX6744 in CEAN's name, nor any accounts in

his name.  The bank account with number XXXXXX6744 was actually

in the name of Superior Home Builders Inc.  Superior Home

Builders was the fictitious employer used on the false documents submitted to Flaherty Funding regarding the mortgage loan received by JOCELYN JOSEPH.

44. ADP, Inc. was unable to locate any information pertaining to BC Eye Glass Express.

45. The mortgage loan in the amount of $585,000 was never provided by Flaherty Funding to CEAN because discrepancies were discovered in the mortgage loan file by JPMorgan Chase Bank, NA.

## LOSS

46. As a result of the five false mortgage loan applications and supporting documents submitted to Flaherty Funding, Flaherty Funding provided three mortgage loans totaling $1,714,000.00.  The remaining two mortgage loan applications, which were not provided by Flaherty Funding totaled $913,500.

## CHARGES

47. Based on the above facts, probable cause exists that during the year 2008, in the Western District of New York, EBHOMIELEN and JOSEPH, in connection with the purchase of the

-16-

property located at  16404 107th Avenue, Jamaica, New York 11433,
knowingly executed a scheme to defraud Flaherty Funding and for
obtaining money from Flaherty Funding by means of false and
fraudulent pretenses, representations and promises, in violation
of Title 18, United States Code, Section 1341.

48.   Based on the above facts, probable cause exists that
during the year 2008, in the Western District of New York,
EBHOMIELEN, BANKSTON, HENRY and TAYLOR, in connection with the
purchase of the property located at 1785 Pacific Street,
Brooklyn, New York 11213, knowingly executed a scheme to defraud
Flaherty Funding and for obtaining money from Flaherty Funding by
means of false and fraudulent pretenses, representations and
promises, and conspired to do so, in violation of Title 18,
United States Code, Section 1341, and Title 18, United States
Code, 371.

49.   Based on the above facts, probable cause exists that
during the year 2008, in the Western District of New York,
EBHOMIELEN and LAWSON, in connection with the purchase of the
property located at 883 Herkimer Street, Brooklyn, New York
11233, knowingly executed a scheme to defraud Flaherty Funding
and for obtaining money from Flaherty Funding by means of false

-17-

and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1341.

50. Based on the above facts, probable cause exists that during the year 2008, in the Western District of New York, EBHOMIELEN, in connection with the intended purchase by ARTUSA of the property located at 29 Beach Avenue, Copiague, New York 11726, knowingly attempted to execute a scheme to defraud Wells Fargo Bank, NA and for obtaining money from Wells Fargo Bank, NA by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

51. Based on the above facts, probable cause exists that during the year 2008, in the Western District of New York, EBHOMIELEN, in connection with the intended purchase by CEAN of the property located at 117 48 135th Street, South Ozone Park, New York 11420, knowingly attempted to execute a scheme to defraud JPMorgan Chase Bank, NA and for obtaining money from JPMorgan Chase Bank, NA by means of false and fraudulent

pretenses, representations and promises, in violation of Title

18, United States Code, Section 1344.

MICHELLE K. MANN
U.S. Postal Inspector


Subscribed and sworn before me
this _13_ day of October, 2009.


HON. MARIAN W. PAYSON
U.S. MAGISTRATE JUDGE